IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Christopher Dale Stepp, #300260,  )
                     Petitioner,  )    Civil Action No. 8:09-522-SB-BHH
                                   )
            v.                    )    **REPORT AND RECOMMENDATION**
                                   )    **OF MAGISTRATE JUDGE**
Leroy Cartledge,  )
Warden of McCormick  )
Correctional Institution,  )
                    Respondent.  )

The Petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 18.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on February 25, 2009.[1] On August 21, 2009, the Respondent moved for summary judgment. By order filed August 24, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On September 30, 2009, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion.

---

[1]This date reflects that the petition was date stamped as received on April 3, 2007, at the McCormick Correctional Institution mailroom. (Pet. Attach. # 2.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

# I. **PROCEDURAL HISTORY/FACTS**

The Petitioner, a state prisoner, is currently incarcerated at the McCormick Correctional Institution. In December 2001, the Petitioner was indicted for possession with intent to distribute ("PWID") marijuana, third offense, (App. 94-95), and then in August 2003 he was indicted for trafficking methamphetamine, third offense, and possession of a weapon during the commission of a violent crime (App. 97-98).[2]

The underlying facts show that the Petitioner was riding as a passenger in a car which was stopped by a Mauldin Police Department officer for speeding and because it matched a description of a "be on the lookout" or "BOLO" notice that the Greenville Sheriff's Department had been looking for in connection with a possible kidnaping of a young woman: a brown station wagon with a North Carolina tag with four occupants described as three males and one female  There were three other people in the car in which the Petitioner was riding, two men and a young woman. Eventually, the car and its occupants were determined not to be involved in the kidnaping. However, the car and its occupants had been searched, and guns and drugs were discovered.

C. Timothy Sullivan, Esq., represented the Petitioner on these charges. A jury trial was held March 3-4, 2004, with the Honorable Larry R. Patterson presiding. The jury convicted the Petitioner as charged. (App. 286.)  The judge sentenced Petitioner to twenty-seven (27) years for the trafficking charge; five (5) years, concurrent, for the weapons charge; and one (1) year, concurrent, for the possession charge. (App. 290.) The Petitioner timely filed a direct appeal.

---

[2]The undersigned notes that the pagination referred to in this report is found at the bottom center of each page of the Appendix and labeled as the "Petition for Cert Appendix."

J. Falkner Wilkes, Esq., represented the Petitioner on appeal. On March 29, 2005, Wilkes filed a brief with the South Carolina Court of Appeals raising the following issues:

> 1. Did the extensive detention and subsequent search of the vehicle amount to an unreasonable search and seizure?
>
> 2. Does evidence require suppression as fruits of unlawful search?
>
> 3. Is there sufficient evidence to support a finding of dominion and control over drugs that were locked in the trunk in a container?

(App. 294.) On December 6, 2005, the South Carolina Court of Appeals affirmed the convictions in an unpublished opinion finding the first two issues were not preserved for appellate review and the third issue abandoned. (App. 318-319.) The Petitioner did not seek review in the Supreme Court of South Carolina, and that Court of Appeals issued the remittitur on December 22, 2005.

On July 14, 2006, the Petitioner filed an application for post-conviction relief ("PCR") raising the following grounds for relief:

> 1) Ineffective assistance of trial counsel;
>
> 2) State's improper and erroneous identification by SSN and SCCID & FBI#.

(App. 83.) Wilkes again represented the Petitioner in his PCR action. On December 13, 2006, an evidentiary hearing was held before the Honorable Edward W. Miller. On December 27, 2006, Judge Miller issued a written order denying relief. (App. 2-9.) The Petitioner appealed the denial of relief.

On July 16, 2007, Wilkes filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina, raising the following issues:

> 1. Was trial counsel ineffective for failing to object to use of evidence obtained through unreasonable search and seizure?
>
> 2. Was trial counsel ineffective for failing to move in limine for a ruling on the proper application of Rule 609 in this case?

> 3. Did the failure of trial counsel to move for a Rule 609 ruling undermine the Applicant's decision to waive his right to testify.

(Cert. Petition at 3.) On September 17, 2008, the Supreme Court of South Carolina denied the petition, and, on October 6, 2008, issued the remittitur.

In this federal habeas petition, the Petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** Ineffective Assistance of Trial Counsel for failing to object and preserve issue for appeal.
>
> **Supporting Facts:** Trial counsel failed to object and properly preserve issue relating to evidence obtained from illegal search of vehicle - as S.C. Court of Appeals found Trial Counsel ineffective therein. The PCR Court erroneously denied relief, and the S.C. Supreme Court issued a summary Denial on this issue.
>
> **Ground Two:** Ineffective Assistance of Trial Counsel for failing to seek a ruling on use of impeachment evidence.
>
> **Supporting Facts:** Trial counsel admitted to not seeking a ruling as to the use of my prior convictions, for Impeachment purposes, by the State at my trial.

(Habeas Pet. 6-7.)

## II. **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations,

4

a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or

5

> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

## EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B) (I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007). Furthermore, strict time

deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

. . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause

if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

### III. **DISCUSSION**

**Ground One**

In Ground One, the Petitioner contends that his trial counsel was ineffective for failing to "properly preserve issue relating to evidence obtained from illegal search of vehicle." (Habeas Pet. at 6.) The Respondent contends that this issue is without merit.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, i.e. "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at

689. Further, there is a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Strickland,* 466 U.S. at 689-90.

Specifically, the Petitioner contends that the Court of Appeals found trial counsel was ineffective by finding the issue was procedurally barred on direct appeal. (Habeas Pet. at 6). However, the Court of Appeals was addressing a direct appeal issue regarding the search and merely found that the direct appeal issue had not been preserved. The Court of Appeals did not address whether trial counsel was ineffective which is not a proper direct appeal issue. As noted above, to establish a claim of ineffective assistance of counsel, the petitioner must show not only deficient performance, but also prejudice.

The Petitioner raised this issue in his PCR proceeding and the PCR court held that the Petitioner had not shown prejudice. The Petitioner contends that the PCR Court erred in several ways. First, he argues the transcript rebuts the PCR Court's finding that the gun was in plain sight. He refers to the officer's trial testimony in which he initially stated that the object "looked like" a long gun, not that it was a long gun. Second, the Petitioner argues that the once the occupants of the car were separated and the female occupant was away from the others, a search was not necessary. (Habeas Pet. Attach. 5.)

The PCR Court, however, found that the search of the car was prompted by the officer's observation of an empty gun holster and not the long gun. (App. 7.)[3] This conclusion is supported by the officer's trial testimony. The officer's testified he saw an object that "looked like" a long gun, but the officer testified that this observation did not prompt the search. (App. 186-87.) He questioned the Petitioner about his identity and date of birth. The officer testified that the Petitioner stated that he did not have any identification on him. The officer asked the Petitioner his date of birth and age and the

---

[3]The undersigned notes that the owner and driver of the car, William Brown, (App. 136), testified that "[i]t seems like I remember telling them they could [search the car]. . ." (App. 155.) At trial, the tape recording of the stop did not show that Brown consented to the search of the car. (App. 165.)

11

Petitioner gave a date which did not match his stated age. The Officer stated his suspicions were heightened. The officer then walked up to the car and saw an empty gun holster in the passenger seat where the Petitioner had been sitting. (189-191.) He testified the empty holster is what prompted him to search the car:

> Because I couldn't tell what was in it, at that point the law allows me to enter a vehicle when I see - - have probable cause to believe that a crime has been committed. Well, it's a crime to carry a gun in that position. So now the warrant - - the warrantless search rule for a vehicle is a lot different than it would be for your home, because of the mobility of the vehicle. Well, the law allows me not to, without consent to enter that vehicle, because I have probable cause to believe that a crime has been committed. There is a crime of a handgun unlawfully concealed in a vehicle. So that's why I entered the vehicle, to search further. . .

(App. 191-192.)

The Petitioner argues that carrying a concealed weapon is a misdemeanor and would not, by itself, be sufficient to warrant the search of the car. (Pet.'r's Mem. Opp. Summ. J. Mot. at 3.) The case cited by the Petitioner, *Welsh v. Wisconsin*, 466 U.S. 740 (1984), involved the warrantless search of a house and is inapplicable to the warrantless search of an automobile. "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Probable cause exists when the "totality of the circumstances" - including the facts and circumstances within an officer's knowledge - would "convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000).

Here, the officer had spoken with the Petitioner and received suspicious answers regarding his date of birth and age and he saw an empty gun holster in the passenger side of the car. Based upon the totality of the circumstances, the officer had probable cause to search the car. *See United States v. Spencer,* 1 F.3d 742, 743, 746 (9th Cir.1992) (as amended) (holding that probable cause to believe that gun is in car exists where recent

12

occupant is wearing empty shoulder holster and was seen making concealing movements under the car's front seat before exiting vehicle).

The PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this issue is without merit and should be dismissed.

**Ground Two**

In Ground Two, the Petitioner contends that trial counsel was ineffective for failing to request that the trial judge allow the prior drug convictions to be referenced as "felonies" and not as specific drug convictions. (App. 35.) The Respondent contends this issue is without merit.

At the PCR hearing, trial counsel testified that he had advised the Petitioner that his prior convictions "could probably [be] use[d] against him," and that he did not even think of requesting the prior convictions be referenced to only generically as felonies. He testified that he left the ultimate decision of whether to testify up to the Petitioner. (App. 42.) The Petitioner testified at the PCR hearing that he would have testified at trial but for the prosecution's use of his prior convictions to impeach him. (App. 4-5.)

The PCR Court found the Petitioner's testimony was not credible and trial counsel's testimony was credible. (App. 5.) The PCR Court also found "it is purely speculative that the trial judge would have simply referred to these convictions as 'felony convictions' if the Applicant had decided to testify" and noted that is was ultimately the Petitioner's decision whether to testify. (App. 6.) Further, the PCR Court noted that the Petitioner's record "contained far more than the two marijuana convictions" he referenced at the PCR hearing and his record directly contradicted his testimony that he did not have prior methamphetamine convictions. (App. 6.)

Based on all the evidence, the record fails to show that, but for his trial counsel's alleged failures, there is a reasonable probability that the result of the proceedings would

have been different.  *See Strickland,* 466 U.S. at 694.  In short, the record does not undermine confidence in the outcome of the proceedings.  *Id*.  The PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Accordingly, this issue is without merit and should be dismissed.

## IV. <u>CONCLUSION</u>

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (# 18) be GRANTED and the Petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

December 3, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**